```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
LOSS PREVENTION WORKS, LLC             :     10 Civ. 7616 (DLC)
                    Plaintiff,         :     11 Civ. 0816 (DLC)
                                       :
              -v-                      :       OPINION & ORDER
                                       :
MARCH NETWORKS, INC. and MARCH NETWORKS,:
CORP.,                                 :
                    Defendants.        :
                                       :
-------------------------------------- X
```

APPEARANCES:

For Plaintiff:

Gary H. Fechter
McCarter & English, LLP
245 Park Avenue, 27th Floor
New York, NY 10167

Scott S. Christie
Jonathan Short
Mark H. Anania
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Lucian Ulmet
J.C. Neu & Associates
318 Newman Springs Road
Red Bank, NJ 07701

Steven Glen Mintz
Terrence William McCormick
Mintz & Gold LLP
470 Park Ave. South, 10th Fl. North
New York, NY 10016


For Defendants:

Robert D. Goldstein

J. William Cook
Aime Dempsey
Nicholas S. Allison
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

DENISE COTE, District Judge:

On March 11, 2011, March Networks, Inc. ("MNI") and March Networks Corporation ("MNC") (collectively, "defendants") filed a motion (the "March 11 Motion") for attorneys' fees and sanctions pursuant to 28 U.S.C. § 1927 on the grounds that a complaint filed by Loss Prevention Works, LLC ("LPW") on February 7 was filed in "bad faith and for the purpose of unreasonably and vexatiously multiplying the proceedings between the parties." On April 1, defendants moved (the "April 1 Motion") pursuant to the parties' contract to recover the attorneys' fees and costs they incurred while defending against a separate complaint filed by LPW on October 5, 2010. For the reasons stated below, defendants' March 11 Motion is denied but its April 1 Motion is granted.

BACKGROUND

In December 2009, MNI sold its Data Investigation Services ("DI services") business line to LPW. This sale was accomplished through two transactions: (1) the December 21, 2009 Transaction Agreement ("the Transaction Agreement"); and, (2) the December 31, 2009 Teaming Agreement (the "Teaming

Agreement"). The Transaction Agreement included a provision titled "Attorney's Fees," which provides, in relevant part:

> In the event of any litigation or action to enforce the terms and conditions of this Agreement, <u>the prevailing party shall be entitled to recover from the nonprevailing party all fees and costs of such enforcement</u>, including without limitation, filing fees, arbitrator fees, mediator fees, attorneys and other legal fees and costs, consultant fees, and costs of collection.

(Emphasis supplied.)[1]

Additionally, as part of LPW's acquisition of the DI Services business, MNI gave LPW an exclusive license to use a software application called Extreme Loss Prevention (the "ELP Software"). The ELP Software is a program that analyzes point of sale ("POS") transaction data collected from retail store cash registers and identifies trends and patterns from this data to generate a report identifying suspicious transactions that might be indicative of employee theft or misconduct.

On October 5, 2010, LPW filed a complaint against defendants MNI and MNC[2] (the "First Action") and simultaneously sought a temporary restraining order. All of LPW's claims in the First Action stemmed from its allegation that MNI breached the Transaction and Teaming Agreements and unlawfully competed

---

[1] The Teaming Agreement did not include an attorneys' fees provision.

[2] MNC was never served and therefore was dismissed pursuant to an Order dated March 1, 2011.

with LPW by upgrading its Retail Transaction Investigator ("RTI") software, thereby preventing LPW from entering into a contract with Dunkin Brands, Inc. for use of the ELP Software. Specifically, LPW brought six claims against MNI for: (1) breach of the Transaction Agreement; (2) breach of the Teaming Agreement; (3) breach of the implied covenant of good faith and fair dealing; (4) tortious interference with prospective business relations; (5) unfair competition; and, (6) permanent injunctive relief.

Rather than acting on LPW's application for a TRO, with the consent of the parties, the Court treated LPW's request as a motion for a preliminary injunction and the parties were instructed to propose a schedule for expedited discovery and a preliminary injunction hearing. Pursuant to an Order entered on October 19, discovery was to close on October 29 and a hearing would be held on November 15. On October 21, however, LPW requested that discovery be extended. This would have required an adjournment of the preliminary injunction hearing. MNI opposed that request. In an October 25 conference call, LPW withdrew its motion for a preliminary injunction in exchange for MNI's consent to an expedited trial on the merits. By Order dated November 12, discovery was set to end on January 26, 2011, and the trial to begin on February 14.

4

On February 1, 2011, a week before the final pretrial conference for the First Action was scheduled to take place, LPW filed a letter application for an extension of discovery to investigate a second MNI product, VideoSphere, which it alleged also competed with ELP.  At a conference convened on February 3, the Court first held that the allegations in the First Action were limited to the RTI product.  Second, absent the consent of the defendants, the Court exercised its discretion to preclude LPW from amending its complaint or extending discovery to advance an argument that the Court found would "transform the case."  In so ruling, the Court acknowledged that

> plaintiff could file a separate lawsuit theoretically, if they have Rule 11 ability to do so, and so the defendants might face a second piece of litigation.  I don't know if they will or won't.  And it may be in their interest not to.

In response, defense counsel indicated that he was so "absolutely desirous of moving forward on the existing schedule" for the First Action that he and his clients were "willing to take the risk that another lawsuit will be brought."

On February 7, just days before the trial of the First Action was set to begin, LPW filed a second complaint, restating the claims asserted in the First Action but adding a claim for "unjust enrichment" (the "Second Action").  The Second Action differed from the First Action in one material respect.  Whereas the First Action alleged that MNI's modifications to the RTI

software violated its obligations to LPW, the Second Action contended that MNI's VideoSphere portfolio of products breached these same commitments.  LPW also brought a motion to consolidate the two related actions.  Citing the reasons given on-the-record at the February 3 conference, the Court denied the motion to consolidate at the Final Pre-Trial Conference for the First Action, held on February 8.

The jury trial of the First Action took place between February 16 and March 1, 2011.  On February 24, at the close of LPW's case in chief, the Court granted MNI's motion for a directed verdict and dismissed LPW's claim for breach of the implied covenant of good faith and fair dealing, and LPW voluntarily withdrew its claims against MNI for tortious interference with prospective business relations and unfair competition.  On March 1, the jury returned a verdict in favor of LPW on its two breach of contract claims in the amount of $5.8 million.  The Court, however, granted MNI's request for a directed verdict.  The Court set a schedule for the filing of post-trial motions, but the only motions filed were the instant motions for an award of attorneys' fees and a motion to extend the time to appeal.

Currently, there are two motions for attorneys' fees pending before this Court.  First, on March 11, MNI filed a motion to recover attorneys' fees and sanctions in connection

6

with the filing of the Second Action, pursuant to 28 U.S.C. § 1927 (the "March 11 Motion").[3]  On April 1, LPW voluntarily withdrew the Second Action.  Second, on April 1, in accordance with a scheduling order dated March 1, MNI filed a post-trial motion to recover the attorneys' fees and costs associated with the First Action (the "April 1 Motion") under the "Attorneys' Fees" provision of the Transaction Agreement.  The March 11 and April 1 Motions became fully submitted on May 13 and April 27, respectively.

DISCUSSION

I.  The March 11 Motion

Defendants move for attorneys' fees and sanctions in connection with the Second Action pursuant to 28 U.S.C. § 1927, which provides in pertinent part:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (emphasis supplied).  Section 1927 only applies to attorneys or those authorized to practice before the courts.

---

[3] Defendants also moved to dismiss the Second Action pursuant to Rule 12(b)(6), Fed. R. Civ. P.  This motion is moot since the complaint was subsequently withdrawn.  The Court, however, retains jurisdiction to decide MNI's motion for attorneys' fees and sanctions.  Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 141 (2d Cir. 2002).

Salovaara v. Eckert, 222 F.3d 19, 35 n.13 (2d Cir. 2000).  A court may sanction counsel pursuant to § 1927 "only when there is a finding of conduct constituting or akin to bad faith." State Street Bank & Trust Co. v. Inversiones Errazuriz Limitada, 374 F.3d 158, 180 (2d Cir. 2004) (citation omitted).  The standard for sanctioning counsel pursuant to § 1927 is the same standard for imposing sanctions pursuant to a court's inherent authority:  a finding of "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay."  Eisemann v. Greene, 204 F.3d 383, 396 (2d Cir. 2000) (citation omitted).  Such sanctions are "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."  State Street Bank, 374 F.3d at 180.

	The defendants have not shown by clear evidence that sanctions and fees under § 1927 should be awarded against LPW's attorneys based on their filing of the Second Action.  There is insufficient evidence that the claims in the Second Action were so completely devoid of merit that they must have been brought in bad faith.

	When the Second Action was filed, the trial on the First Action had not yet commenced and LPW had not received any

guidance from the jury or the Court concerning the merits of its claims. Within a month of the Court's directed verdict in the First Action, LPW withdrew the Second Action.

II. The April 1 Motion

Based on the Attorneys' Fees provision of the Transaction Agreement, MNI seeks an award of attorneys' fees and costs associated with the First Action in the amount of $946,861.05 and $166,880.66, respectively. "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." Netjets Aviation, Inc. v. LHC Commc'n, LLC, 537 F.3d 168, 175 (2d Cir. 2008).[4] Whether a contract is clear or ambiguous is a question of law. Lockheed Martin Corp. v. Retail Holdings, N.V., 639 F.3d 63, 69 (2d Cir. 2011) (New York law). "It is well settled that a contract is unambiguous if the language it uses has a definite and precise meaning, as to which there is no reasonable basis for a difference of opinion." Id.

The Attorneys' Fees provision of the Transaction Agreement provides that "[i]n the event of any litigation . . . to enforce the terms . . . of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all fees and

---

[4] It is undisputed that New York law applies.

9

costs of such enforcement." This provision unambiguously provides that if either of the parties to the contract brings an action to enforce its terms, the non-prevailing party must pay the prevailing party's fees and costs. It is undisputed that LPW brought an action to enforce a term of the Transaction Agreement and that MNI prevailed in the subsequent enforcement litigation. Accordingly, under the Transaction Agreement's Attorneys' Fees provision, MNI is entitled to recover its attorneys' fees and costs.[5]

LPW principally contends that it is the <u>only</u> party that could possibly recover attorneys' fees under the Transaction Agreement, since it was the sole party seeking to "enforce" the contract. It emphasizes the term "such enforcement" in the sentence which allows "the prevailing party" to recover fees and costs "of such enforcement" in the event there is "any litigation to enforce" the contract. This argument fails.

The unambiguous contract language allows any prevailing party, whether the plaintiff or the defendant, to recover fees in an action like that at issue here. By defending against LPW's meritless claims, MNI incurred "fees and costs" during an action brought to enforce contractual rights. New York courts routinely award prevailing defendants fees and costs in such

---

[5] LPW does not suggest that the amount of the award sought by MNI is unreasonable.

circumstances. See Residential Holdings III LLC v. Archstone-Smith Operating Trust, 83 A.D.3d 462, 468 (1st Dep't 2011) (defendants the prevailing party entitled to fees and costs in an action brought to enforce a contract); Kessel Brent Corp. v. Benderson Prop. Dev., Inc., 68 A.D.3d 1709, 1709 (4th Dep't 2009) (same). Thus, even under LPW's interpretation of the contract, MNI must prevail.[6]

Finally, LPW asks that MNI's application for fees and costs be held in abeyance until the Second Circuit has heard LPW's appeal from the Court's directed verdict. This request is denied. Rule 54, Fed. R. Civ. P., which requires parties to file a motion for attorneys' fees "no later than 14 days after the entry of judgment," id., was designed to "minimize the need for piecemeal litgation" by "enabl[ing] the [district] court to make its ruling on a fee request in time for any appellate review." Weyant v. Okst, 198 F.3d 311, 314 (2d Cir. 1999) (citation omitted). It is appropriate to render this decision on the merits of the motion so that any appeal from this decision can be joined with any appeal from the judgment entered in the First Action. LPW's obligation to pay attorneys' fees

---

[6] The only reported case to which LPW cites is not inconsistent with this interpretation. Tower Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 525 (2d Cir. 1990) (party that defended action entitled to recover attorneys' fees).

11

and costs in the amount of $1,113,741.71 may be stayed by posting the appropriate bond at the time it files the appeal.

CONCLUSION

The defendants' March 11 motion for attorneys' fees and sanctions is denied, but their April 1 motion for attorneys' fees and costs is granted. The Clerk of Court shall enter judgment for the defendants in the amount of $1,113,741.71 and close this case.

SO ORDERED:

Dated: New York, New York
November 21, 2011

_____
DENISE COTE
United States District Judge